554 P.2d 1264

The STATE of Arizona, Appellee,

v.

Roger Terry Lee WARE, Appellant.

No. 3474.

Supreme Court of Arizona,
In Banc.

Sept. 7, 1976.

338

Bruce E. Babbitt, Atty. Gen. by William J. Schafer, III, and Lynn Hamilton, Asst. Attys. Gen., Phoenix, for appellee.

Ross P. Lee, Maricopa County Public Defender by Michael G. Sullivan, Deputy Public Defender, Phoenix, for appellant.

CAMERON, Chief Justice.

This is an appeal by Roger Terry Lee Ware from a jury verdict and judgment of guilt to two counts of armed robbery, A. R.S. §§ 13–641 and 13–643, and concurrent sentences thereon of not less than ten nor more than fifteen years in the Arizona State Prison.

The following questions are presented:

1. Was the in-court identification impermissibly tainted by the pretrial identification procedures?

2. Was the sentence excessive?

The facts giving rise to this appeal are as follows. On 21 March 1975, a Shop-N-Go Market located at 13828 North 35th Avenue was robbed by a gunman using a small caliber pistol. Joseph Vogt was working in the store at the time. On 30 March 1975, while Steven Peters and Jerry Joaquin were on duty, a Circle K located at 3537 West Glendale was also robbed. The robber carried a sawed-off shotgun. A surveillance camera in the Circle K was triggered during the robbery and took a series of photographs of the crime as it progressed.

During the c￼ ￼ ￼e of the investigation which followed, Detective Hayden Williams of the Phoenix Police Department conducted a live lineup. All three of the victims separately viewed this lineup. Mr. Joaquin was unable to identify anyone in the lineup and did not testify on the issue of identification at trial. Mr. Peters and Mr. Vogt both identified the defendant.

Approximately two days prior to this live lineup, Mr. Peters was shown a photograph taken by the surveillance camera at the time of the robbery in which he was a victim. At trial, Peters testified that a police officer came to the store in which he was working, showed him the photograph and asked if it depicted the man who had robbed him. Peters responded affirmatively. Vogt was also shown a single photo taken by a surveillance camera in some other convenience market. This occurred approximately a week prior to the lineup.

## WAS THE IN–COURT IDENTIFICATION IMPERMISSIBLY TAINTED?

We are required to determine, based upon "the totality of the circumstances," whether the pretrial identification procedures were so unnecessarily suggestive as to constitute a denial of due process. *Stovall v. Denno*, 388 U.S. 293, 87 S. Ct. 1967, 18 L.Ed.2d 1199 (1967); *State v. Dessureault*, 104 Ariz. 380, 453 P.2d 951 (1969); cert. den. 397 U.S. 965, 90 S.Ct. 1000, 25 L.Ed.2d 257 (1970). Questions as to whether there has been an accurate in-court identification of the defendant, not tainted by prior identification procedures and whether such procedures were fair,

are preliminary questions for the trial court. *State v. Dessureault,* supra. That determination will not be overturned on appeal absent a clear and manifest error. *State v. Milonich,* 111 Ariz. 442, 532 P.2d 504 (1975); *State v. Williams,* 111 Ariz. 175, 526 P.2d 714 (1974).

■ We do not agree with defendant's contention that the conduct of the police in showing Peters a surveillance photo taken during the robbery of which he was a victim was unduly suggestive. The photograph shown to Peters was taken during the crime. The copies introduced into evidence as Exhibits 1–14 clearly depict Peters himself in addition to the suspect. At the preliminary hearing, Peters testified that he was shown the picture the day after the robbery but two days prior to the lineup which was held the day defendant was arrested. It would appear that the police were seeking the aid of Peters in further identifying the robbery suspect as a basis for future arrest rather than attempting to unduly suggest that the person in custody was, in fact, the person who committed the robbery. We do not find that the procedure followed resulted in "a very substantial likelihood of irreparable misidentification." *Simmons v. United States,* 390 U.S. 377, 384, 88 S.Ct. 967, 971, 19 L.Ed.2d 1247, 1253 (1968).

■ A somewhat different question is presented by the identification procedures involving Mr. Vogt. He was shown a single photo of the defendant and advised that it was a surveillance photo from another convenience market. Thus, Vogt knew that the man in the picture had committed at least one robbery similar to the one of which he had been a victim. We believe, based on the totality of the circumstances, that this procedure was unduly suggestive.

■ We must, therefore, determine whether the suggestive out-of-court identification tainted the in-court identification. The law allows an in-court identification after a suggestive out-of-court identifica-

tion if there is sufficient evidence of an independent source upon which the in-court identification could be based. *State v. Lang,* 107 Ariz. 400, 489 P.2d 37 (1971). In *Neil v. Biggers,* 409 U.S. 188, 93 S.Ct. 375, 34 L.Ed.2d 401 (1972), the court listed five factors to be considered in evaluating the likelihood of misidentification:

1. the opportunity of the witness to view the criminal at the time of the crime,

2. the witness' degree of attention,

3. the accuracy of the witness' prior description of the criminal,

4. the level of certainty demonstrated by the witness at the confrontation, and

5. the length of the time between the crime and the confrontation.

■ Applying those factors here, Vogt observed the suspect face to face in the well-lighted store for approximately three minutes, he was not just a casual observer but rather his attention was focused directly on the suspect. His description was accurate. At the lineup, Vogt did not hesitate or indicate any uncertainty in his identification. During the Dessureault hearing, his testimony indicated that the photo did not assist him substantially in his identification of the defendant:

"Q Now prior to your going to that line up did any police officer or anyone show you a photograph of anyone concerning the incident?

"A Yes.

   *     *     *     *     *     *

"Q Could you, if you can recall, describe the photograph?

"A Really there wasn't much to describe because it was a blur.

"Q Was it just a single portrait of a person?

"A Yes, it was a portrait of a person. It was sort of like there was too much light on the picture. You could make out the person's head and part of the face features."

**340**

In addition, he specifically stated that his identification at the lineup was based on seeing the defendant during the crime, not on the photograph or anything that occurred after the crime. The robbery having taken place on the 21st of March, less than twelve days had passed when the lineup occurred. The photo show-up preceded the lineup by approximately one week. Thus, Vogt's memory was relatively fresh. We believe, based on these factors, that the lineup and in-court identifications were reliable and we find no error in the trial court's refusal to suppress them.

### EXCESSIVE SENTENCE?

■ Defendant next contends that the sentence imposed was excessive. Ware received two concurrent sentences of not less than ten nor more than fifteen years in the Arizona State Prison. We have stated:

"The legislature has given the trial court broad discretion in sentencing a defendant for a period within the statutory minimum and maximum. Because a defendant appears in person before the trial judge, the trial judge is, in most instances, better able than we to evaluate the defendant and his circumstances and to determine what action will most likely rehabilitate him to constructive activity. (citations omitted) Accordingly, this Court has consistently held that the pronouncing of a sentence is within the sound discretion of the trial court and that we will uphold a sentence if it is within the statutory limits unless there is a clear abuse of discretion. (citations omitted)" *State v. Smith*, 107 Ariz. 218, 219, 484 P.2d 1049, 1050 (1971).

There are no mitigating factors present which would indicate that a reduction in sentence is appropriate or that the court below abused its discretion. We find no error.

Judgments and sentences affirmed.

STRUCKMEYER, V. C. J., and HAYS, HOLOHAN and GORDON, JJ., concur.