NOTICE: NOT FOR OFFICIAL PUBLICATION.
UNDER ARIZONA RULE OF THE SUPREME COURT 111(c), THIS DECISION IS NOT PRECEDENTIAL
AND MAY BE CITED ONLY AS AUTHORIZED BY RULE.

IN THE

# ARIZONA COURT OF APPEALS
### DIVISION ONE

---

ANDREW MUSCAT, an incompetent person, by Marcie Berman, his
permanent guardian, *Plaintiff/Appellant*,

*v.*

CREATIVE INNERVISIONS, an Arizona limited liability company;
TEMITAYO AKANDE and JOHN DOE AKANDE, wife and husband,
*Defendants/Appellees*.

No. 1 CA-CV 19-0555
FILED 8-18-2020

---

Appeal from the Superior Court in Maricopa County
No. CV2014-014300
The Honorable Sherry K. Stephens, Judge

**AFFIRMED**

---

COUNSEL

Law Offices of Robert A. Butler, P.L.L.C., Phoenix
By Robert A. Butler
*Co-Counsel for Plaintiff/Appellant*

Law Office of Dennis A. Sever, P.L.L.C., Mesa
By Dennis A. Sever
*Co-Counsel for Plaintiff/Appellant*

Grasso Law Firm, P.C., Chandler
By Robert Grasso, Jr.
*Counsel for Defendant/Appellee Creative Innervisions*

Metzger Law Firm, P.L.L.C., Phoenix
By Nathan T. Metzger
*Counsel for Defendants/Appellees Temitayo Akande and John Doe Akande*

---

**MEMORANDUM DECISION**

Judge Maria Elena Cruz delivered the decision of the Court, in which Presiding Judge Lawrence F. Winthrop and Judge David B. Gass joined.

---

**C R U Z**, Judge:

**¶1**		Andrew Muscat ("Muscat") appeals the superior court's order dismissing his complaint for claims of abuse and neglect under the Adult Protection Services Act ("APSA"). For the following reasons, we affirm.

### FACTUAL AND PROCEDURAL HISTORY

**¶2**		Muscat is a profoundly disabled person who requires constant supervision because of his lack of impulse control and his inability to make decisions to protect himself from abuse, neglect, or exploitation.

**¶3**		In 2008, Muscat inappropriately touched a child in a restroom, resulting in a conviction for child abuse. Muscat was eventually placed in a group home owned by Creative Innervisions ("Creative"). Creative, along with a state disabilities agency, created an individual support plan that required Creative always have one-on-one supervision of Muscat, even in the bathroom.

**¶4**		A few years later, Temitayo Akande, a Creative employee, drove Muscat to a local church for an event. Upon arrival, Akande instructed Muscat to get out of the car and go into the church. Akande then drove away and left Muscat at the church without supervision. At the church, Muscat followed a child into the restroom and sexually molested the child. Muscat was arrested about a year later and charged with child

2

molestation. Muscat pleaded guilty to attempted child molestation and attempted kidnapping; he was sentenced to an eight-year prison term.

¶5         Muscat filed a civil complaint against Creative and Akande for his injuries, including loss of freedom and quality of life, while incarcerated. Muscat asserted claims for negligence and APSA claims of abuse and neglect of a vulnerable adult. The superior court dismissed all of Muscat's claims.

¶6         Muscat appealed to this court in *Muscat v. Creative Innervisions LLC* ("*Muscat I*"), 244 Ariz. 194 (App. 2017). In *Muscat I*, we held "that a person who has been properly incarcerated for a criminal conviction has not suffered a legally cognizable injury—for purposes of establishing a negligence claim—when the alleged harm flows solely from the incarceration." *Id.* at 199, ¶ 19. We, therefore, affirmed the dismissal of Muscat's negligence claims because all injuries, such as loss of freedom, stemmed from his incarceration. *Id.* As it pertains to the APSA claims, we declined to address them because Creative had not addressed the claim in its motion for judgment on the pleadings, neither Creative nor Muscat provided meaningful analysis of the vulnerable adult statutes, and the superior court did not analyze the claims in its dismissal order. *Id.* at 200, ¶ 22. We remanded to the superior court noting, "[w]hether Muscat has stated a viable claim under [Arizona Revised Statutes ("A.R.S.") section] 46-455(B) must be considered by the superior court in the first instance." *Id.*

¶7         On remand, Muscat was permitted to file an amended complaint. Muscat alleged that while he was incarcerated, he was deprived of medication, medical services, and other services needed to maintain his minimum physical and mental health. He asserts he suffered from delusions. Muscat also alleges he was given medication that was known to cause aggressive behaviors, and that during a resulting "fit of aggression," he was tackled by a corrections officer, resulting in physical injuries including a broken pelvis. Muscat also alleged general mental and emotional injuries. Muscat sought to hold Creative and Akande liable for his injuries based on their failure to supervise him, causing him to be incarcerated and suffer said injuries.

¶8         The superior court found Muscat failed to prove under APSA that he suffered a legally recognized injury and that his injuries were caused by Creative's and Akande's abuse or neglect. Therefore, the superior court dismissed Muscat's first amended complaint. Muscat timely appealed, and we have jurisdiction under A.R.S. § 12-2101(A)(1).

**DISCUSSION**

**¶9**      Dismissal of a complaint under Arizona Rule of Civil Procedure ("Rule") 12(b)(6) is appropriate if as a matter of law, the plaintiff "would not be entitled to relief under any interpretation of the facts susceptible of proof." *Fid. Sec. Life Ins. Co. v. State*, 191 Ariz. 222, 224, ¶ 4 (1998). "In determining if a complaint states a claim on which relief can be granted, courts must assume the truth of all well-pleaded factual allegations and indulge all reasonable inferences from those facts, but mere conclusory statements are insufficient." *Coleman v. City of Mesa*, 230 Ariz. 352, 356, ¶ 9 (2012). We review questions of law and the grant of a dismissal under Rule 12(b)(6) *de novo*. *Id.* at 356, ¶ 8.

I.      APSA Claim

**¶10**      We note at the outset that "because APSA is remedial in nature, it warrants a broad interpretation." *Est. of Braden ex rel. Gabaldon v. State*, 228 Ariz. 323, 325, ¶ 9 (2011). "But '[a] liberal construction is not synonymous with a generous interpretation,' and we will not impose '[a] burden or liability not within the terms or spirit of the law.'" *Id.* (first quoting *Nicholson v. Indus. Comm'n*, 76 Ariz. 105, 109 (1953); and then quoting *Goodyear Aircraft Corp. v. Indus. Comm'n*, 62 Ariz. 398, 402 (1945)).

**¶11**      Section 46-455(B) provides that "[a] vulnerable adult whose life or health is being or has been endangered or injured by neglect, abuse or exploitation may file an action in superior court against any person or enterprise that has been employed to provide care." A.R.S. § 46-455(B). By its terms, the statute divides the causes of action into claims for being: (1) endangered by abuse, neglect, or exploitation from a caregiver; and (2) injured by abuse, neglect, or exploitation from a caregiver. *See, e.g.*, *Delgado v. Manor Care of Tucson AZ, LLC*, 242 Ariz. 309, 313, ¶¶ 17, 19 (2017). Muscat asserts APSA claims for both being injured and endangered by abuse and neglect.

**¶12**      As a preliminary matter, Muscat, Creative, and Akande are proper parties to an APSA claim. To prevail in an APSA action, Muscat must first demonstrate he is a vulnerable adult. A.R.S. § 46-455(B). A vulnerable adult is "an individual who is eighteen years of age or older and who is unable to protect himself from abuse, neglect or exploitation by others because of a physical or mental impairment." A.R.S. § 46-451(A)(10). The parties do not dispute that Muscat qualifies as a vulnerable adult. Additionally, a claim may only be brought against those who provide care to a vulnerable adult. A.R.S. § 46-455(B). Creative and Akande do not

dispute they were both employed to provide care for Muscat, and the complaint's allegations establish the same.

A.     Injury Claims

¶13     Abuse is defined as "[i]njury caused by negligent acts or omissions," among other definitions. A.R.S. § 46-451(A)(1)(b). Harmonizing this definition of abuse with the section defining what constitutes a claim, A.R.S. § 46-455(B), our supreme court has held one must prove an injury to bring an actionable APSA claim for such abuse. *Delgado*, 242 Ariz. at 313, ¶ 19. Similarly, one must prove an injury to bring an actionable APSA claim for injuries suffered by neglect. A.R.S. § 46-455(B).

¶14     Muscat's alleged injuries fall into three distinct categories: (1) injuries flowing exclusively from the fact of being incarcerated; (2) injuries incurred from the time of his criminal conduct and up to the time of his incarceration; and (3) injuries stemming from the Department of Corrections' ("DOC") alleged misconduct while Muscat was incarcerated.

1.     Inherent Consequences of Incarceration

¶15     As in *Muscat I*, Muscat continues to advance the allegation of certain injuries that stem solely from his legally imposed incarceration, including loss of freedom. Muscat asserts the superior court erred when it interpreted our decision in *Muscat I* to mean he had not suffered a legally recognizable injury and when it dismissed his APSA claims solely on that basis. But in *Muscat I*, we did not decide the viability of Muscat's APSA claims. Instead, we remanded that issue for the superior court to consider in the first instance, *see Muscat I*, 244 Ariz. at 200, ¶ 22, and no inference regarding the proper analysis of an APSA claim may be drawn from such action.

¶16     Now that the superior court has properly considered Muscat's APSA claims of injury flowing from the consequences of his criminal offense, we decide that issue on its merits. In determining whether Muscat suffered injury for purposes of an APSA claim, we first ascertain the meaning of "injury" within APSA. APSA does not define the term "injury." Therefore, we look to the commonly accepted meaning of injury. *See State v. Reynolds*, 170 Ariz. 233, 234 (1992). Muscat relies on *Walker v. Mart*, 164 Ariz. 37, 41 (1990), which states "[a]n injury is simply an invasion of some right possessed by the plaintiff." In *Muscat I*, we discussed the commonly accepted meaning of injury while also citing *Walker*. *See Muscat I*, 244 Ariz. at 198, ¶¶ 12-15. We further stated:

> It is undisputed that Muscat was properly incarcerated, meaning he was sentenced to prison (with presentence incarceration credit) after he was found competent to stand trial and found guilty of the offenses set forth in the plea agreement. Given that his alleged injuries arise only out of a legally imposed incarceration, Muscat alleges no injury that is distinct from the consequences of his prison sentence. Criminal defendants have legally protected interests that may be affected during criminal proceedings, but no properly-convicted criminal has a legally protected interest in being free from the *inherent consequences* of the resulting sentence.

*Id.* at ¶ 15 (emphasis added). Accordingly, we held "a person who has been properly incarcerated for a criminal conviction has not suffered a legally cognizable injury—for purposes of establishing a negligence claim—when the alleged harm flows solely from the incarceration." *Id.* at 199, ¶ 19.

¶17 Here, given the legislature did not expressly define the meaning of injury within APSA, and because it does not appear from APSA's context that a special meaning was intended, we apply the common meaning of the term injury to Muscat's APSA claims. *Reynolds*, 170 Ariz. at 234. In his first amended complaint, Muscat again alleges injuries that stem solely from his legally imposed incarceration. For example, Muscat alleges he suffered injuries including "loss of freedom" and not being able to "participat[e] in all of life's activities he enjoyed prior to incarceration." As it pertains to the inherent consequences of his incarceration, Muscat has not suffered a legally-recognizable harm within the commonly accepted meaning of injury. The superior court properly dismissed Muscat's APSA abuse and neglect claims for injuries alleged relating to his incarceration.

2. Inherent Consequences of Criminal Conduct

¶18 Muscat also asserts "for the year from the incident up to the time of his incarceration he suffered mental and emotional anguish and anxiety as a result of the incident." Therefore, Muscat contends, the superior court erred when it determined that all of Muscat's injuries stemmed from his legally imposed incarceration and dismissed his claims for failure to allege a legally cognizable injury.

¶19 As alleged, the mental and emotional anguish and anxiety are not injuries limited to Muscat's incarceration; however, the injuries alleged do all stem from his own criminal conduct. That is, any mental and emotional harm, pain, suffering, distress, and anxiety occurring prior to his

incarceration naturally flow from Muscat's criminal act and are a result of fear of consequences within the criminal justice system. In *Muscat I*, we concluded harms that "arise solely from the consequences of [Muscat's] own criminal conduct . . . do not constitute legally cognizable injuries." *Muscat I*, 244 Ariz. at 196, ¶ 1. We hold Muscat's purely mental and emotional anguish and anxiety during the year between his commission of the criminal act and the date of his incarceration flow from Muscat's own criminal conduct and do not constitute a compensable injury under APSA. Therefore, Muscat's APSA claims for injuries alleged to have occurred prior to incarceration must also be dismissed.

### 3. Injuries Caused by DOC's Misconduct

**¶20** APSA requires proof that a caregiver's neglect or abuse caused the alleged injuries sustained by a vulnerable adult. A.R.S. § 46-455(B); *see also Delgado*, 242 Ariz. at 313, ¶¶ 17-19. Creative and Akande assert their conduct did not proximately cause Muscat's alleged injuries stemming from DOC's misconduct. Muscat counters that any proximate cause issue must be decided by a jury. "Generally, proximate cause is a question of fact for the jury." *Petolicchio v. Santa Cruz Cnty. Fair & Rodeo Ass'n*, 177 Ariz. 256, 262 (1994). "However, the court may properly decide proximate cause if, after reviewing the facts, there is 'no reasonable chance or likelihood that the conclusions of reasonable persons would differ.'" *Id.* "Accordingly, courts may also decide whether a superseding cause exists, requiring dismissal of a claim as a matter of law." *Id.* In *Barrett v. Harris*, 207 Ariz. 374, 378, ¶ 11 (App. 2004), we said the following about proximate cause:

> A plaintiff proves proximate cause, also referred to as legal cause, by demonstrating a natural and continuous sequence of events stemming from the defendant's act or omission, unbroken by any efficient intervening cause, that produces an injury, in whole or in part, and without which the injury would not have occurred. An "efficient intervening cause" is an independent cause that occurs between the original act or omission and the final harm and is necessary in bringing about that harm. An intervening cause becomes a superseding cause, thereby relieving the defendant of liability for the original negligent conduct, "when [the] intervening force was unforeseeable and may be described, with the benefit of hindsight, as extraordinary."

*Id.* (alteration in original) (footnote omitted) (internal citations omitted) (quoting *Robertson v. Sixpence Inns of Am.*, 163 Ariz. 539, 546 (1990)).

¶21        In this case, Muscat alleges the DOC deprived him of medication, medical services, and other necessary services, administered inappropriate medication to him, and caused him to sustain a broken pelvis. The alleged misconduct on the part of DOC occurred long after Creative's and Akande's failure to supervise Muscat, and the misconduct was necessary in bringing about the harm because all of Muscat's alleged injuries flow from DOC's alleged misconduct. As such, any failure by DOC to provide proper medical care to Muscat was an efficient intervening cause. It was also a superseding cause. Reasonable minds would not differ in concluding Muscat's incarceration and subsequent deprivation of proper medical services were unforeseeable when Creative and Akande failed to supervise Muscat and were an extraordinary result of any negligence on Creative's or Akande's part. Accordingly, Muscat cannot, as a matter of law, state a claim against Creative and Akande for his injuries at the hands of DOC.

        B.        Endangerment Claims

¶22        Muscat asserts that he was endangered when he was unreasonably confined. Under APSA, abuse includes "unreasonable confinement." A.R.S. § 46-451(A)(1)(c). As mentioned above, Muscat must prove a caregiver unreasonably confined him. *See supra* ¶¶ 11-12. The complaint does not allege Creative or Akande confined Muscat, or caused him to be confined, in any way other than the subsequent legal incarceration, for which he cannot recover damages. The superior court did not err in dismissing Muscat's claim for allegedly being endangered by abuse as a result of unreasonable confinement.

¶23        Muscat's complaint also alleges he was endangered by Creative's and Akande's neglect. Neglect means "a pattern of conduct without the person's informed consent resulting in deprivation of food, water, medication, medical services, shelter, cooling, heating or other services necessary to maintain minimum physical or mental health." A.R.S. § 46-451(A)(6). On appeal, Muscat contends he was endangered by Creative's and Akande's conduct but provides no facts or analysis as to what endangerment he faced because of the alleged neglect. Muscat, therefore, has abandoned this argument, and we deem it waived. *See State v. Moody*, 208 Ariz. 424, 452, ¶ 101 n.9 (2004). Assuming *arguendo* that Creative's and Akande's failure to supervise was a demonstrable pattern of conduct, that conduct did not result in the deprivation of any services listed

in the applicable statute. As such, there was no neglect, within the statutory definition of A.R.S. § 46-451(A)(6), on the part of Creative and Akande. Accordingly, the superior court did not err in dismissing Muscat's claim for being endangered by neglect.

## CONCLUSION

**¶24** For the foregoing reasons, we affirm the superior court's dismissal of Muscat's APSA claims.



AMY M. WOOD • Clerk of the Court
FILED:    AA